**FOR PUBLICATION**

# JUDICIAL COUNCIL
# OF THE NINTH CIRCUIT

IN THE MATTER OF BRAD LEVENSON

ORDER

Filed February 2, 2009

Before: Stephen Reinhardt, Circuit Judge.

---

**ORDER**

REINHARDT, Circuit Judge:

**Overview**

Brad Levenson, a deputy federal public defender in the Office of the Federal Public Defender for the Central District of California ("FPD"), married Tony Sears on July 12, 2008, in accordance with California law. Three days later, Levenson requested that Sears be made a family member beneficiary of his federal health, dental, and vision benefits (hereinafter "federal benefits"). Levenson's request was denied on the ground that his spouse is male and the federal Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7, prohibits the provision of federal benefits to same-sex spouses. Levenson filed a complaint with the FPD, alleging that the denial of benefits violates the Ninth Circuit's Employment Dispute Resolution Plan for Federal Public Defenders and Staff ("EDR Plan"), which expressly prohibits discrimination on the basis of sex and sexual orientation, as well as the United States Constitution. For the reasons explained below, I agree, and direct the Director of the Administrative Office of the United States Courts to submit Levenson's Health Benefits Election form

1

2809 to the appropriate health insurance carrier, and to process his request for FEDVIP coverage.

## Facts

Brad Levenson has been a deputy federal public defender in the FPD since July 11, 2005. He and Tony Sears have been partners for 15 years. They registered their domestic partnership on March 16, 2000, and were married in California on July 12, 2008. On July 15, 2008, Levenson requested that his husband be added as a family member beneficiary of his federal benefits. That request was denied on the basis of a memorandum prepared by the Office of the Circuit Executive stating that the provision of benefits to same-sex spouses is prohibited by DOMA. According to the memorandum:

> [T]he federal government does not recognize a same-sex union as marriage for any purpose, even if the state law recognizes such unions as marriages.
>
> Judicial Branch employees work for the federal government. The federal law defines a federal employee's rights to health benefits, and those benefits are delivered through the Federal Employee Health Benefits (FEHB) program. For this reason, we can not [sic] extend any health benefits beyond those prescribed by federal law.

Levenson alleges that this denial violates the EDR Plan, as well as the Constitution.

The EDR Plan was adopted by the Ninth Circuit Judicial Council "to provide rights and protections to employees of the Federal Public Defender Offices . . . which are comparable to those provided to legislative branch employees under the Congressional Accountability Act of 1995."[1] EDR Plan at

---

[1] The Congressional Accountability Act of 1995 "extended to [Congress's] employees the protections of eleven labor laws generally applica-

A-1. The Plan prohibits discrimination on numerous grounds, including both sex and sexual orientation. *Id.* at A-2. The availability of health, dental, and vision insurance for oneself and one's family is a valuable benefit of employment,[2] and denial of such a benefit on account of sex or sexual orientation would violate the terms of the EDR plan.

As required by the EDR Plan, *see id.* at A-6-A-9, Levenson requested counseling, which failed, and mediation, which also failed. He then filed the pending complaint. *Id.* at A-10. In my role as Chair of the Ninth Circuit's Standing Committee on Federal Public Defenders at the time of the complaint's filing, and presently as designee of the current Chair of the Standing Committee, I am charged with hearing and ruling upon Levenson's complaint. *Id.*

## Analysis

## I.  Levenson's Rights under the EDR Plan Were Violated

There is no doubt that the denial of Levenson's request that

---

ble to other public and private employees, including the protections against discrimination provided in Title VII . . . ." *Dotson v. Griesa*, 398 F.3d 156, 173 (2d Cir. 2005). "In enacting the CAA, Congress initially considered extending the statute's coverage to employees of the judicial branch but, mindful of the importance of judicial autonomy, ultimately decided against such action." *Id.* Thus, the EDR Plan, rather than Title VII or any other federal labor law, provides Levenson's exclusive remedy for his claim of employment discrimination.

[2]FPD employees and their family members have the right to these benefits pursuant to the Federal Employee Health Benefits Act, 5 U.S.C. §§ 8901-8914 ("FEHBA"), and FEDVIP, the federal employee dental and vision insurance program, *see* 5 U.S.C. §§ 8951-62, 8981-92; 5 C.F.R. §§ 894.101 *et seq.* Before Levenson joined the FPD, he was employed in the California Attorney General's Office, which provided Sears with full medical, dental, and vision benefits. Since Levenson joined the FPD, he and Sears have paid $277 per month to provide Sears with health insurance, and have also paid the full cost of Sears's dental and vision care.

Sears be made a beneficiary of his federal benefits violated the EDR Plan's prohibition on discrimination based on sex or sexual orientation. Levenson was unable to make his spouse a beneficiary of his federal benefits due solely to his spouse's sex. If Sears were female, or if Levenson himself were female, Levenson would be able to add Sears as a beneficiary. Thus, the denial of benefits at issue here was sex-based and can be understood as a violation of the EDR Plan's prohibition of sex discrimination. Alternatively, the denial of benefits can be understood as discrimination on the basis of sexual orientation. As the California Supreme Court recently explained, the differential treatment of opposite-sex and same-sex couples

> cannot be understood as having merely a disparate impact on gay persons, but instead properly must be viewed as directly classifying and prescribing distinct treatment on the basis of sexual orientation. By limiting [benefits] to opposite-sex couples, the [ ] statutes, realistically viewed, operate clearly and directly to impose different treatment on gay individuals because of their sexual orientation. By definition, gay individuals are persons who are sexually attracted to persons of the same sex and thus, if inclined to enter into a marriage relationship, would choose to marry a person of their own sex or gender. A statute that limits [benefits] to a union of persons of opposite sexes, thereby placing [those benefits] outside the reach of couples of the same sex, unquestionably imposes different treatment on the basis of sexual orientation. In our view, it is sophistic to suggest that this conclusion is avoidable by reason of the circumstance that the marriage statutes permit a gay man or a lesbian to marry someone of the opposite sex, because making such a choice would require the negation of the person's sexual orientation.

*In re Marriage Cases*, 43 Cal. 4th 757, 839-40 (2008).

Because the EDR Plan prohibits discrimination based on both sex and sexual orientation, it is not necessary to determine which form of discrimination is at issue in the present proceeding in order to find a violation of the EDR Plan. Regardless of whether Levenson experienced discrimination due to his sex or due to his sexual orientation, the denial of benefits violated the EDR Plan.

## II.    What Is the Remedy, if Any?

Levenson's rights under the EDR Plan were violated. It is therefore necessary to determine the appropriate remedy, if any. Before doing so, however, I must consider the effect of DOMA, which, as applied to the FEHBA and FEDVIP, precludes an award of federal benefits to Levenson's spouse. Ultimately, I conclude that, to provide for the equal treatment of all judicial branch employees within the Ninth Circuit, and because any other directive would be unconstitutional, the appropriate remedy in this case is an order requiring the provision of FEHBA and FEDVIP benefits to Levenson's spouse.

Federal employees, including employees of the FPD, receive health benefits pursuant to the FEHBA. The FEHBA permits federal employees to elect coverage "either as an individual or for self and family," 5 U.S.C. § 8905(a), and defines "member of family" as "the spouse of an employee or annuitant" or "an unmarried dependent child under 22 years of age . . . ." 5 U.S.C. § 8901(5). FEDVIP likewise defines "family member" as "a spouse . . . and/or unmarried dependent child(ren)." 5 C.F.R. § 894.101. These definitions of family member are limited, however, by DOMA, which provides that, "[i]n determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man

and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7. Accordingly, the FEHBA and FED-VIP provisions defining family members to include spouses must be interpreted, pursuant to DOMA, to include only *opposite-sex* spouses.

DOMA on its face "does not purport to preclude Congress or anyone else in the federal system from extending benefits to those who are not included within [its] definition [of marriage]," *Smelt v. County of Orange*, 447 F.3d 673, 683 (9th Cir. 2006). DOMA simply limits the definition of "spouse" under federal law. It is the FEHBA, when read in light of the subsequently enacted DOMA, which appears to have that effect.[3] For two reasons, however, I conclude that, DOMA and the FEHBA notwithstanding, it is both necessary and appropriate to direct that Levenson's husband receive the federal benefits requested by Levenson.

First, in a recent decision resolving an identical complaint by a member of the central staff of the Ninth Circuit Court of Appeals, Chief Judge Kozinski, as hearing officer under the EDR Plan for Ninth Circuit employees, ordered the provision of FEHBA benefits to her same-sex spouse. According to that decision, the legal significance of the definition of "member of family" at 5 U.S.C. § 8901(5) is ambiguous, because the FEHBA does not expressly state whether FEHBA coverage can be afforded *only* to those family members falling within the definition provided by § 8901(5), or whether benefits may be provided to others as well. According to the ruling in that proceeding, under the doctrine of constitutional avoidance, *see I.N.S. v. St. Cyr*, 533 U.S. 289, 300 (2001), this ambiguity

---

[3]The statutes that establish FEDVIP incorporate the definition of family member in the FEHBA, 5 U.S.C. §§ 8951, 8981, and have the same structure as the FEHBA. For the sake of simplicity, I will conduct the subsequent discussion solely in terms of the FEHBA. However, the arguments apply in full to both the FEHBA and FEDVIP.

must be resolved in favor of providing the coverage to same-sex spouses even though they do not fall within the statutory definition of "member of family," because a contrary construction of the FEHBA as limited by DOMA would raise significant constitutional questions.

Although Chief Judge Kozinski's order was issued under the EDR Plan applicable to Ninth Circuit employees, rather than the EDR plan applicable to FPD employees, both plans were prepared and approved by the Judicial Council of the Ninth Circuit, and their anti-discrimination provisions are identical. The plans thus reflect the Judicial Council's intent to treat FPD employees and other judicial branch employees equally in matters pertaining to their right to be protected from workplace discrimination. Although I am not bound by Chief Judge Kozinski's decision, in order to ensure that the rights of FPD employees under the FPD EDR Plan are the same as those of other judicial branch employees in the Ninth Circuit, the remedy chosen by the Chief Judge should be adopted here unless I conclude that I am compelled to disagree with his choice of remedy as a matter of law. Because I do not disagree with the Chief Judge's ultimate holding, I direct that the same-sex spouses of FPD employees be granted the same benefits as same-sex spouses of other judicial branch employees, specifically, that in this case, Levenson's spouse be provided with FEHBA and FEDVIP benefits.

Although I adopt the same remedy as the Chief Judge, I reach that conclusion in a somewhat different manner. I must reluctantly disagree with the view that the FEHBA is ambiguous. I believe instead that the only reasonable reading of that statute is that it does not permit coverage of persons falling outside its definition of family member. Accordingly, I believe that I am compelled to reach the constitutional issue. Doing so, I conclude that the application of DOMA to FEHBA so as to deny Levenson's request that his same-sex spouse receive federal benefits violates the Due Process Clause of the Fifth Amendment.

In reaching that conclusion, I believe it likely that some form of heightened constitutional scrutiny applies to Levenson's claims. *See, e.g.*, *Witt v. Dep't of Air Force*, 527 F.3d 806, 818-21 (9th Cir. 2008) (applying heightened scrutiny on an "as applied" basis to a discharged service member's challenge to the military's "Don't Ask, Don't Tell" policy); *id.* at 823-26 (Canby, J., concurring in part and dissenting in part) arguing that discrimination based on sexual orientation is subject to strict scrutiny); *see also Baehr v. Lewin*, 852 P.2d 44, 67, 68 (Haw. 1993) (finding distinction between opposite-sex couples and same-sex couples to be a sex-based classification subject to heightened scrutiny). However, the denial of benefits here cannot survive even rational basis review, the least searching form of constitutional scrutiny. Accordingly, it is not necessary to determine whether heightened scrutiny is applicable to this claim. Because there is no rational basis for denying benefits to the same-sex spouses of FPD employees while granting them to the opposite-sex spouses of FPD employees, I conclude that the application of DOMA to the FEHBA so as to reach that result is unconstitutional.

Any government action resting on a distinction between discrete classes "must be rationally related to a legitimate governmental purpose." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446 (1985). Under this standard, "[t]he State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational. Furthermore, some objectives — such as a bare desire to harm a politically unpopular group — are not legitimate state interests." *Id.* at 446-47 (citations omitted). Applying this standard to the present case, the challenged denial of benefits is constitutional only if there is a rational basis for the government to provide FEHBA and FEDVIP coverage to the opposite-sex spouses of FPD employees while denying those benefits to the same-sex spouses of FPD employees. No such basis exists.[4]

---

[4]I should note that marriage is a status traditionally established and regulated by state law. It is also a fundamental right. *Loving v. Virginia*, 388

The denial of federal benefits to same-sex spouses cannot be justified simply by a distaste for or disapproval of same-sex marriage or a desire to deprive same-sex spouses of benefits available to other spouses in order to discourage them from exercising a legal right afforded them by a state. As *City of Cleburne* made clear, "a bare desire to harm a politically unpopular group" cannot provide a rational basis for governmental discrimination. *Id.* at 447. In *Romer v. Evans*, 517 U.S. 620 (1996), the Supreme Court applied that rule in the specific context of a law that discriminated against gay people and held that the state constitutional amendment at issue, which raised "the inevitable inference that the disadvantage imposed [was] born of animosity" toward gay people as a class, was unconstitutional. *Id.* at 634-36. Thus, the denial of federal benefits to same-sex spouses cannot be justified as an expression of the government's disapproval of homosexuality, preference for heterosexuality, or desire to discourage gay marriage. *Romer* makes clear that the differential treatment of gay people is not, in and of itself, a proper justification for government actions. Discrimination against gay people, or same-sex couples, must, at the very least, serve some more substantive and lawful function.

The House report on DOMA identified three interests advanced by the statute: "the government's interest in defending and nurturing the institution of traditional, heterosexual marriage;" "the government's interest in defending traditional notions of morality;" and "the government's interest in preserving scarce government resources." H.R. Rep. No. 104-664, at *12-*18. The first interest is largely irrelevant to the rational basis analysis here because the same-sex couple here

U.S. 1, 12 (1967). Whether a state may deny such status to same-sex couples is beyond the scope of this decision. Here, I need determine only whether same-sex couples who have been legally married under the laws of the relevant state may, because of the sex or sexual orientation of the couple, be denied federal benefits that are afforded to other couples legally married under such laws.

is already married. Gay people will not be encouraged to enter into marriages with members of the opposite sex by the government's denial of benefits to same-sex spouses, and the denial will not discourage same-sex couples from entering into same-sex marriages; so, the denial cannot be said to "nurture" or "defend" the institution of heterosexual marriage. As to the second "interest," if the denial is designed to "defend" traditional notions of morality by discouraging same-sex marriage, it does so *only* by punishing same-sex couples who exercise their rights under state law, and thus exhibits the "bare desire to harm" same-sex couples that is prohibited under *City of Cleburne* and *Romer.* In addition, denying married same-sex spouses health coverage is far too attenuated a means of achieving the objective of "defending traditional notions of morality," as it also is with respect to achieving the objective of "defending and nurturing the institution of traditional, heterosexual marriage." More important, *Romer* and *Lawrence v. Texas*, 539 U.S. 558 (2003), strongly suggest that the government cannot justify discrimination against gay people or same-sex couples based on "traditional notions of morality" alone. *See Lawrence*, 539 U.S. at 571, 578 (finding criminal law barring homosexual sodomy constitutionally invalid despite "powerful voices" that "for centuries" have "condemn[ed] homosexual conduct as immoral"); *Romer,* 517 U.S. at 644 (Scalia, J., dissenting) (noting that the Colorado constitutional amendment held unconstitutional by the majority expressed the "moral disapproval of homosexual conduct" of Colorado's citizens). For these reasons, neither of the first two interests identified by Congress can provide a rational basis for the denial of benefits at issue here.

The third interest can be disposed of quickly. The denial of health insurance to same-sex spouses may in a comparatively few cases relieve the government of paying its portion of a family coverage premium. However, that a government policy incidentally saves the government an insignificant amount of money does not provide a rational basis for that policy if the policy is, as a cost-saving measure, drastically underinclusive,

let alone founded upon a prohibited or arbitrary ground. *See Lazy Y Ranch Ltd. v. Behrens*, __ F.3d __, 2008 WL 4368216, at *8 (9th Cir. Sept. 26, 2008). That rule applies here: There is no rational relationship between the sex of an employee's spouse and the government's desire to limit its employee health insurance outlays; the government could save far more money using other measures, such as by eliminating coverage for all spouses; and the application of DOMA in this context sometimes saves the government no money at all.[5]

I can identify no other government interests that might be served by denying Levenson's request that Sears receive the same federal benefits available to other spouses of FPD employees. Excluding from health care coverage spouses of employees who have entered into legally binding relationships does not serve the government's interest in promoting long-term relationships. Likewise, it does not serve any governmental interest in promoting a child-rearing environment, because the children of same-sex couples are eligible for federal benefits and the denial of benefits to same-sex spouses will not affect the decisions made by same-sex couples regarding marriage or parenting. Aside from all else, the relationship of the denial of benefits to such potential objectives is "so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne*, 473 U.S. at 446. Accordingly, a decision denying Levenson's request that federal benefits be extended to his same-sex spouse would have no rational basis. In sum, to the extent that the application of DOMA serves to preclude the provision of health insurance coverage to a same-sex spouse of a legally married federal employee because of the employee's and his or her spouse's sex or sexual orientation, DOMA as applied contravenes the Fifth

---

[5]The denial of coverage to same-sex spouses of FPD employees does not save the government any money if an FPD employee already has family coverage for a dependent, such as a child, because there is no cost to the employee or to the government of adding an additional family member to an existing family policy.

Amendment to the Constitution and is therefore unconstitutional.

To ensure the equal treatment of judicial branch employees in the Ninth Circuit and to preclude the unconstitutional denial of benefits to Levenson's spouse, the Director of the Administrative Office of the United States Courts is ordered to submit Levenson's Health Benefits Election form 2809, which he signed and submitted on July 15, 2008, to the appropriate health insurance carrier, and to process Levenson's request that Sears be added as a beneficiary of his FEDVIP benefits. Any future beneficiary addition requests are also to be processed without regard to the sex of a listed spouse.

I retain jurisdiction over this matter so that I may issue any further order that may be necessary to ensure that Levenson's spouse receives the benefits to which he is entitled.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.